**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CATHARINE WAYNE, *on behalf of herself and all similarly situated consumers*, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 1:21-cv-1391 |
| VELOCITY INVESTMENTS, LLC, | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY OR DISMISS UNDER THE *COLORADO RIVER* DOCTRINE**

Defendant Velocity Investments, LLC seeks a stay or dismissal of Ms. Wayne's case under the *Colorado River* abstention doctrine. To obtain this relief, Velocity must show—as a threshold matter—that Ms. Wayne's federal lawsuit against Velocity is parallel to Velocity's state court lawsuit against Ms. Wayne. Because the two lawsuits turn on different legal theories and seek different remedies—Ms. Wayne seeks actual and statutory damages under the FDCPA against Velocity for false statements made during its debt-collection attempts, while Velocity seeks a monetary judgment against Ms. Wayne for an alleged defaulted debt—the cases are not parallel, and no basis exists to apply the *Colorado River* doctrine. The analysis can stop there. But even if the Court were to proceed with a *Colorado River* analysis, no exceptional circumstances warrant a stay or dismissal of Ms. Wayne's federal lawsuit. The Court should deny the Motion.

**BACKGROUND**

Velocity is a debt collector that purchases defaulted debts for pennies on the dollar and attempts to collect the full debt from consumers. (Compl. ¶ 11, ECF No. 1.) To maximize profits,

Velocity purchases minimal information about defaulted debts—often a mere summary of thousands of defaulted accounts attached to a purchase agreement. (*Id.* ¶¶ 12–13.) When suing Virginia consumers—which Velocity does hundreds of times each year—it seldom pays live witnesses to attend trials or seek business records custodians from original creditors to authenticate account information. (*Id.* ¶ 17.) These measures, of course, would significantly increase Velocity's litigation costs. Instead, and to avoid any potential hearsay objections, Velocity submits a "Certification of Business Records" under Virginia Code § 8.01-390.3 to authenticate its summarized data. (*Id.* ¶¶ 14–16.) This certification, which appears to be a form document, contains material misrepresentations about the debt that Velocity seeks to collect from consumers, including: (1) how the documents of *another* business were made and maintained; and (2) that summaries were part of Velocity's business records. (*Id.*) These statements are false because the affiant has no knowledge of the creation or maintenance of the other entity's business records, and the account summaries are not business records. (*Id.* ¶¶ 24–28.) But Velocity continues to submit these false certifications to courts across Virginia so that it can obtain judgments against consumers for debts that it cannot prove while incurring minimal litigation costs. (*Id.* ¶¶ 16, 28.)

Ms. Wayne is a victim of these abusive debt collection tactics. In April 2021, Velocity sued Ms. Wayne in Fairfax County General District Court for $9,573.49, plus post-judgment interest and costs. (*Id.* ¶ 18.) According to Velocity, this is the amount that Ms. Wayne owes for an alleged defaulted One Main account—a debt that Velocity bought for pennies on the dollar. (*Id.*) After Fairfax County General District Court ordered pleadings, Ms. Wayne filed an answer and asserted defenses to Velocity's claim, but she did not raise any counterclaims. As part of the state court case, Velocity filed a Certification of Business Records, which made false statements about Ms. Wayne's alleged debt. (*Id.* ¶ 19.) For example, it stated that the documents attached to the

certification (which belonged to another business) were made at or near the time of the transactions listed in the documents; that the documents were made by a person with knowledge of the transactions; and that the documents were kept in Velocity's regularly conducted business. (*Id.* ¶¶ 20–28.) As discussed above, these statements were false. After Ms. Wayne's counsel objected to the certification, Velocity withdrew it. (Ex. 1.) And because Velocity's certification made false statements during its attempt to collect a debt, Ms. Wayne sued for relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f. For her § 1692e claim, Ms. Wayne seeks statutory damages and attorneys' fees for herself and all similarly situation consumers. (Compl. ¶¶ 37–40.) For her § 1692f claim, Ms. Wayne seeks actual damages, statutory damages, and attorneys' fees. (*Id.* ¶¶ 41–45.)

After Ms. Wayne filed this lawsuit, the state court case proceeded to trial. To support its case, Velocity offered a single witness—a Velocity employee—who, by Velocity's own admission, could not authenticate any of the so-called business records:

> THE COURT: Would you otherwise have been ready for trial today?
>
> MR. JONES, JR.: Yes, Your Honor.
>
> THE COURT: Okay.
>
> MR. JONES, JR.: We have a witness available by video to demonstrate - -
>
> THE COURT: Just one witness?
>
> MR. JONES, JR.: Just one witness. She's ready to go, she's online, as I understand, and, essentially, her testimony is just going to be that we bought it from Onemain, these are our business records, this is how much she owes, very straight-forward collection.
>
> THE COURT: But, the objection is the business record exception about Onemain, is that right?
>
> MS. NASH: There are several business records. They are Onemain's business records. The witness -- my understanding, she is not Onemain's custodian and,

> therefore, the records are inadmissible hearsay. They can't lay a foundation [and it] would be [in]eligible for the business record exception because it's not a Onemain custodian.
>
> THE COURT: Okay.
>
> MR. JONES, JR.: That's right, that's exactly right, Judge.

(Ex. 2, Tr. of Jan. 19, 2022 Proceedings, at 10:10–11:19 (cleaned up for clarity).) Because Velocity could not authenticate any of its trial exhibits, it consented to judgment but claimed that it would appeal. *Id.* at 13:20-15:13.

Velocity noted its appeal to Fairfax County Circuit Court on January 25, 2022. Fairfax County Circuit Court has not entered a scheduling order or set any deadlines, and neither party has served discovery or filed any additional pleadings.

## LEGAL STANDARD

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court ruled that a pending state court action does not pose an absolute bar to a federal lawsuit about the same or a similar matter. *Colorado River*, 424 U.S. at 817. As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005). In fact, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, *Colorado River*, 424 U.S. at 817, and "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not," *Chase Brexton*, 411 F.3d at 462 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)).

There is, however, an "extraordinary and narrow" exception to this general rule. *Colorado River*, 424 U.S. at 813. Under the *Colorado River* doctrine, federal courts may abstain from hearing a case if there are (1) parallel proceedings and (2) exceptional circumstances

warranting abstention. *Id.* at 818. The bar to obtain this relief is "high," *Dazza v. Kirschenbaum, Phillips & Levy, P.C.*, No. CV RDB-16-3954, 2017 WL 1315510, at *4 (D. Md. Apr. 10, 2017), and courts should apply the doctrine "parsimoniously," *Chase Brexton*, 411 F.3d at 463.

A party seeking *Colorado River* abstention must first show that the federal and state lawsuits are parallel. *Alfa Laval, Inc. v. Travelers Cas. & Sur. Co.*, 3:09-cv-733-HEH, 2010 WL 431301, at *2 (E.D. Va. Feb. 5, 2010). After meeting this threshold requirement, the moving party must them show that there are exceptional circumstances that warrant the doctrine's application. *Id.* Ms. Wayne's federal case against Velocity is not parallel to Velocity's state court action against her. And even if it were, there are no exceptional circumstances warranting this Court's abdication of its jurisdiction over Ms. Wayne's FDCPA claims.

**ARGUMENT**

**A. The Court should deny Velocity's motion because the two actions are not parallel.**

A federal court can abstain from jurisdiction under *Colorado River* only after a finding that the two cases are parallel. The Fourth Circuit "strictly construe[s] the requirement of parallel federal and state suits, requiring that the parties involved be almost identical." *Chase Brexton*, 411 F.3d at 464. The Fourth Circuit has reviewed the similarities between concurrent federal and state suits in three key respects: 1) the parties; 2) the legal issues; and 3) the remedy sought. *See, e.g.*, *Great American Ins. Co. v. Gross*, 468 F.3d 199, 207–08 (4th Cir. 2006) (reviewing all three criteria in determining that the district court erred in dismissing the suit on *Colorado River* abstention grounds).

The Fourth Circuit also recently clarified that "even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). Indeed,

"[t]he *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals." *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) (quoting *United States v. SCM Corp.*, 615 F. Supp. 411, 417 (D. Md. 1985)); *see also, e.g.*, *Al–Abood v. El–Shamari*, 217 F.3d 225, 232 (4th Cir. 2000) ("Although the two proceedings have certain facts and arguments in common, the legal issues are not substantially the same.").

Here, although Ms. Wayne's federal case and Velocity's state case involve the same parties, the similarities end there. Ms. Wayne's claims allege that Velocity violated the FDCPA by making false statements in its business records certification during the state court litigation. She seeks statutory damages, actual damages, and attorneys' fees. In contrast, Velocity's claims allege that Ms. Wayne is liable for a defaulted OneMain loan. Velocity seeks $9,573.49 in damages, plus post-judgment interest and costs. Because there is no overlap between the legal issues or remedies sought, the cases are not parallel for purposes of *Colorado River* abstention.

*Balsly v. W. Michigan Debt Collections, Inc.* clarifies this issue. No. 3:11-cv-642-DJN, 2012 WL 628490, at *11 (E.D. Va. Feb. 27, 2012). In that case, Judge Novak considered whether a FDCPA federal court case was parallel to a state court collection lawsuit. In holding that the cases were not parallel, he observed many of the same factors present in this case:

> Because Balsly asserts no claims in the Michigan case, there are very different remedies for Balsly here than are available to him in the Michigan case. In Michigan, he defends himself as debtor against a creditor seeking to enforce a credit agreement. As a defendant in that case, Balsly asserts affirmative defenses, which might relieve him of liability, but will not entitle him to damages. Here, pursuant to the FDCPA, Balsly seeks affirmative relief for claims that would entitle him to statutory damages, actual damages, and attorney's fees—none of which are available to him in the Michigan lawsuit. 15 U.S.C. § 1692(a). Moreover, he is entitled to a trial by jury here, which may not be available to him in the Michigan case.

*Id.* The result should be no different in Ms. Wayne's case. Just as in *Balsly*, Ms. Wayne has not counterclaimed in the state court case and her federal lawsuit seeks affirmative damages that she cannot recover in the state court action.[1]

That the two cases are not parallel should end the Court's inquiry and result of the Court's denial of Velocity's motion. *vonRosenberg*, 849 F.3d at 169 (ending its *Colorado River* analysis after finding that the two lawsuits were not parallel).

**B. Even were the two cases parallel, there are no exceptional circumstances that justify *Colorado River* abstention.**

Even if the Court finds that the two actions are parallel, it must still consider whether there are any exceptional circumstances warranting this unfavored relief. In conducting this analysis, a court typically considers:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the

[1] *See also, e.g.*, *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 175 (E.D.N.Y. 2013) ("The Court concludes that this action is not 'parallel' to the state-court collection actions for the same reason that collateral estoppel does not apply: This action concerns defendants' debt-collection methods, while the collection actions involve the validity of the underlying debts. Since the collection actions will not resolve plaintiffs' claims, abstention would not be appropriate."); *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 249 (W.D.N.Y. 2019) ("Here, as in *Fritz*, the state-court proceedings upon which the defendants seem to rely relate to the validity of McCrobie's underlying debts to Providian Financial and Centurion Capital—not whether the defendants violated the FDCPA in attempting to collect those debts. If state-court proceedings were brought to contest whether the assignment of McCrobie's debts from Providian/Centurion to Palisades were valid, that might have required a more detailed abstention analysis. But the defendants have not pointed to anything that indicates that this was the underlying basis of any state-court litigation, and as they have pointed out, it is unlikely that McCrobie has standing to bring such a 'direct attack' on the assignment. On the present record, abstention is not appropriate.")

> rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton,* 411 F.3d at 463–64. Courts also should consider whether the later-filed lawsuit is reactive or vexatious. *See Holland v. Hay,* 840 F. Supp. 1091, 1102 (E.D. Va. 1994) (citing *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934–35 (4th Cir. 1992)).

In considering these factors, the Court should not use them as a "mechanical checklist"; instead, they should use a balancing test, with a heavy weight towards exercising jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Here, none of the seven factors support this Court's abstention from jurisdiction over Ms. Wayne's FDCPA claims.

**a. There are no *in rem* jurisdiction issues in this case.**

The first *Colorado River* factor is "whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others." *Chase Brexton,* 411 F.3d at 463. Here, there is no real or personal property that gives Fairfax County Circuit Court *in rem* jurisdiction. Instead, Velocity's claim is simply a contractual dispute, and Ms. Wayne's FDCPA claims arise from false statements that Velocity made while seeking to collect a debt from her. Although Velocity claims that Fairfax Circuit Court has "jurisdiction to determine the parties' rights in property" (Def.'s Mem. at 4), it does not explain how its contractual dispute with Ms. Wayne gives rise to *in rem* jurisdiction. Because neither case involves any *in rem* jurisdictional issues, this factor does not support *Colorado River* abstention. *See Dazza*, 2017 WL 1315510, at *6; *Alfa Laval*, 2010 WL 431301, at *3.

**b. The Eastern District of Virginia is not an inconvenient forum.**

The second *Colorado River* factor asks whether "the federal forum is an inconvenient one." *Chase Brexton,* 411 F.3d at 463. Velocity offers no evidence of inconvenience, other than its claim that it will be litigating the same issue in two forums. While this argument really falls under the

third factor (piecemeal litigation), it is in any event untrue. Again, the issues in the cases are completely separate. Unlike Velocity's state court case, Ms. Wayne's FDCPA claims do not require any determination of whether she owes the alleged debt. *Balsly*, 2012 WL 628490, at *12 ("Pursuant to the FDCPA, Balsly has a right to pursue his claim regardless of whether he is found liable on the debt in the Michigan proceeding—the two rights are not coterminous. . . . Thus, a stay will not avoid piecemeal litigation."); *see also Vitullo v. Mancini,* 684 F. Supp. 2d 760, 766–67 (E.D. Va. 2010) ("[T]he FDCPA does not permit private litigants to seek injunctive or declaratory relief that has the effect of cancelling or extinguishing a debt . . . . Instead, these litigants are limited to the damages provided [by statute]."). Instead, her claims focus on whether Velocity made false statements in attempting to collect the debt from her.

Velocity has offered no evidence that litigation in the Eastern District of Virginia would be inconvenient, like proof of an inability to present witnesses in this forum. That is because it would not be inconvenient. Many courts, including the Supreme Court in the original *Colorado River* decision, evaluate this factor by examining the physical distance between the two courts. *Colorado River*, 424 U.S. at 820 ("[W]e also find significant . . . the 300-mile distance between the District Court in Denver and the court in Division 7."); *Rogers v. Dow Agrosciences, LLC,* 4:06-cv-15, 2006 WL 2975725, at *7, (W.D. Va. Oct. 16, 2006) (emphasizing the geographical distance between the forums in considering the second *Colorado River* factor); *Balsly*, 2012 WL 628490, at *13 (same). Here, the Alexandria courthouse is less than 16 miles from the Fairfax County Circuit Court, so there is no plausible argument that litigating the federal case in Alexandria would be inconvenient. Velocity has forfeited any other arguments about inconvenience by failing to raise them. *See Alfa Laval*, 2010 WL 431301, at *3 ("Travelers does

not make any compelling arguments to support that the federal forum is inconvenient. Consideration of this factor thus provides no support in favor of abstention.").

**c. There is no risk of piecemeal litigation.**

The third *Colorado River* factor analyzes "the desirability of avoiding piecemeal litigation." *Chase Brexton,* 411 F.3d at 463. Velocity argues that the litigation of this case while the state court case is pending would lead to piecemeal litigation because the state court could determine that the "business records are proper and valid evidence" and could enter judgment using that evidence. (Def.'s Mem. at 5.) But none of these issues are pertinent to Ms. Wayne's federal lawsuit, which concerns whether the statements that Velocity made in its business record affidavit were false. And in any event, Velocity withdrew the business records affidavit, so it is no longer at issue in the state court case. Velocity also admitted that the records offered at trial were not its own business records. (Ex. 2 at 10:10–11:19; 13:20–15:13.)

Despite Velocity's argument, the Supreme Court and Fourth Circuit both have held that the inherent difficulties associated with concurrent litigation, like overlapping evidence and factual issues, do not warrant *Colorado River* abstention. In *Colorado River* itself, the Supreme Court held that "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." 424 U.S. at 816. Similarly, in *Chase Brexton*, the Fourth Circuit held that the district court erred in finding that "disjointed and unreconcilable" results favored abstention. *Chase Brexton*, 411 F.3d at 465–66. The Fourth Circuit explained that "the threat of piecemeal litigation in the sense that two cases proceed simultaneously thus is not sufficient to support a decision to abstain under *Colorado River.*" *Id.*; *see also Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) ("[F]or abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond

those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums.”).

Here, there is no overlap because Velocity withdrew its business records affidavit in the state court case. But even without the withdrawal, there is still no potential for piecemeal litigation because Ms. Wayne has a right to pursue her FDCPA claims even if Fairfax County Circuit Court finds that she is liable for the alleged debt. *Balsly*, 2012 WL 628490, at *12 (“Pursuant to the FDCPA, Balsly has a right to pursue his claim regardless of whether he is found liable on the debt in the Michigan proceeding—the two rights are not coterminous. . . . Thus, a stay will not avoid piecemeal litigation.”); *see also Vitullo,* 684 F. Supp. 2d at 766–67 (“[T]he FDCPA does not permit private litigants to seek injunctive or declaratory relief that has the effect of cancelling or extinguishing a debt . . . . Instead, these litigants are limited to the damages provided [by statute].”). Because Ms. Wayne’s FDCPA claims will continue regardless of the outcome of the state court litigation, *Colorado River* abstention is not appropriate.

**d. Both this case and the Fairfax Circuit Court case are in the early stages of litigation.**

The fourth *Colorado River* factor considers “the relevant order in which the courts obtained jurisdiction and the progress achieved in each action.” *Chase Brexton,* 411 F.3d at 464. Here, even though Ms. Wayne filed her federal case after the filing of the state court case, abstention is still not warranted. To be sure, Ms. Wayne’s lawsuit was necessarily reactive because her FDCPA claims are based on the misstatements that Velocity made during the state court case. That is, the state court case gave rise to her claims. *See, e.g.*, *Balsly*, 2012 WL 628490, at *14

(observing that a similar FDCPA claim was reactive because it was based on a debt collector's litigation conduct).

For situations like Ms. Wayne's, the sequence of filing is not dispositive. Instead, "the order of filing should be viewed pragmatically, meaning that 'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Gannett Co.,* 286 F.3d at 747–48; *Rogers*, 2006 WL 2975725, at *7 ("This factor is not measured merely by seeing which complaint was filed first, but also in terms of how much progress was made in the two actions."). Here, because Velocity has asked that Fairfax County Circuit Court consider its case de novo, the two cases are at a comparable posture. Fairfax County Circuit Court only recently assigned a case number, no pleadings have been filed, no hearings have been set, and no discovery has been served. In Ms. Wayne's federal case, Velocity has moved to dismiss, but the Court has not entered an initial scheduling order, and discovery is not open. As a result, the cases are at essentially the same stage, and this factor does not favor *Colorado River* abstention

**e. The law governing the claims in each case are completely separate.**

The fifth factor for this Court to consider is "whether state law or federal law provides the rule of decision on the merits." *Chase Brexton,* 411 F.3d at 464. Velocity argues that the issues here depend on state court evidentiary standards and the "propriety of the submitted business records." (Def.'s Mem. at 5.) But this argument misstates Ms. Wayne's claims, which depend on whether Velocity made false statements in its business records affidavit and whether those false statements violated the FDCPA—a federal statute.[2] As this Court recognized in a similar FDCPA

[2] And again, even if Velocity argues that whether the statements in its business records were false depends on the Virginia Rules of Evidence, this argument misses the mark. Velocity has already

case, where claims arise exclusively under a federal statute, the fifth *Colorado River* factor weighs heavily against an abstention. *Balsly*, 2012 WL 628490, at *14 ("The Michigan court will address issues of state law, but Balsly's claims here arise exclusively pursuant to federal statute—the FDCPA. . . . . Balsly's claims are likely to proceed in this Court regardless of the outcome in Michigan. Thus, the Defendants' conclusory arguments on this point are unconvincing, and the fifth factor weighs against abstention."). Because federal law determines Ms. Wayne's claims in this lawsuit, this factor does not support *Colorado River* abstention.

**f. Ms. Wayne's FDCPA claims implicate important federal rights, which will not be adequately protected in the state court case.**

The sixth *Colorado River* factor assesses "the adequacy of the state proceeding to protect the parties' rights." *Chase Brexton,* 411 F.3d at 464. This factor supports retention of federal jurisdiction when "an important federal right is implicated and state proceedings may be inadequate to protect the federal right." *Gannett Co.,* 286 F.3d at 746. Here, while Fairfax County Circuit Court can adjudicate Ms. Wayne's defenses to the debt, it cannot adjudicate Ms. Wayne's federal rights because she has not raised them as a counterclaim. *Balsly*, 2012 WL 628490, at *14 ("Here, the Michigan court will apply state law, but this Court will address exclusively issues of federal statute. Thus, it cannot be said that the Michigan court can adequately protect Balsly's

---

agreed that the documents it sought to introduce into evidence were not its business records. (Ex. 2 at 10:10–11:19; 13:20–15:13.)In any event, this is an ancillary issue, and the primary legal theory in Ms. Wayne's federal case arises under the FDCPA—a federal statute.

rights, since his FDCPA rights are not even addressed in that litigation."). As a result, this factor weighs heavily against *Colorado River* abstention.

**g. Ms. Wayne's federal lawsuit is not vexatious or contrived.**

The Supreme Court noted in *Moses H. Cone* that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." 460 U.S. at 17. The Fourth Circuit has since held that abstention under *Colorado River* may be appropriate to deter vexatious litigation when a plaintiff sued in bad faith, to side-step a court's jurisdiction, or to reverse the parties' roles in a case. *Holland,* 840 F. Supp. at 1101.

None of these situations are present here. In fact, Velocity concedes that Ms. Wayne's federal lawsuit is not vexatious. (Def.'s Mem. at 5.) Instead, it argues that her claims are duplicative. But they are not for the reasons discussed above. Nor were they filed in bad faith or to side-step Fairfax County's jurisdiction. Instead, Ms. Wayne's lawsuit was filed to protect her federal FDCPA rights against abusive debt collection practices for Velocity's false statements made during state court litigation. Although these claims are necessarily reactive, they are not the sort of bad-faith, vexatious claims that warrants *Colorado River* abstention.

## CONCLUSION

Velocity has not raised a single credible argument establishing that the Court should abstain from jurisdiction over this case under the *Colorado River* doctrine. The two cases are not parallel, which warrants the motion's denial without further consideration. But even were the two cases parallel, not one exceptional circumstance warrants a stay or dismissal in this case. The Court should deny Velocity's motion.

Respectfully submitted,
**CATHARINE WAYNE**

By: */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*